UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:08-cv-532-RJC

| | |
|---|---|
| OLYMPUS MANAGED HEALTH CARE, INC. and OLYMPUS HEALTHCARE SOLUTIONS, INC., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| AMERICAN HOUSECALL PHYSICIANS, INC. and JONATHAN MCGUIRE, | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |
| AMERICAN HOUSECALL PHYSICIANS, INC. F/k/a INROOMMD, INC., | )<br>)<br>)<br>) |
| Third-party Plaintiff and Counterclaimant, | )<br>)<br>) |
| vs. | )<br>) |
| RONALD A. DAVIS and STEVEN W. JACOBSON, | )<br>)<br>) |
| Third-party Defendants. | ) |

Plaintiffs Olympus Managed Health Care, Inc. and Olympus Healthcare Solutions, Inc. (together, "Olympus") and Defendant American Housecall Physicians, Inc. ("AHP") formerly worked together under a Distribution Agreement in which Olympus agreed to distribute certain services provided by AHP. Pending before the Court is AHP's Motion for Injunctive Relief (Doc. No. 11), filed January 8, 2009. In that motion, AHP seeks to enjoin Olympus from making available to Olympus' clients services similar to those offered by AHP; from employing two former AHP

employees; from using what AHP contends are its trade secrets and "confidential information;" and from using or encouraging its clients to use AHP's alleged trademarks and service marks. The motion also seeks to require Olympus to produce email communications between Olympus and the former employees that are the subject of the motion.

For the reasons set forth below, the Court denies AHP's motion with respect to its requests for injunctive relief other than those related to trademarks and service marks. With respect to AHP's requests for injunctive relief related to its alleged trademarks and service marks, the Court grants in part and denies in part those requests.

I. **APPLICABLE LAW**

The Court will apply North Carolina state law, including its choice of law rules, as to the parties' state law claims. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). The Court applies federal standards when considering a request for a preliminary injunction. <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 811 (4th Cir. 1991).

II. **STANDARD OF REVIEW**

A preliminary injunction is an extraordinary remedy involving the exercise of very far-reaching power, and is to be granted only sparingly and in limited circumstances. <u>Scotts Co. v. United Indus. Corp.</u>, 315 F.3d 264, 271 (4th Cir. 2002). "[D]etermining whether a preliminary injunction should be granted requires the consideration of four factors. These factors are: 1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; 2) the likelihood of harm to the defendant if the preliminary injunction is granted; 3) the likelihood that plaintiff will succeed on the merits; and 4) the public interest." <u>Hughes Network Sys., Inc. v. Interdigital Commc'ns Corp.</u>, 17 F.3d 691, 693 (4th Cir. 1994); <u>see also</u> <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189, 195-96 (4th Cir. 1977). To support an injunction, a movant "must

make a clear showing of actual and immediate irreparable harm that is neither remote nor speculative." Merck & Co. Inc. v. Lyon, 941 F. Supp. 1443, 1455 (M.D.N.C. 1996).

When deciding whether to grant a preliminary injunction, the moving party must make a "clear showing" that it will suffer irreparable harm if the court denies its request. Direx, 952 F.2d at 812-13. Second, if the moving party establishes irreparable harm, the Court balances the likelihood of irreparable harm to the moving party against the failure to grant interim relief against the likelihood of harm to the non-moving party from the grant of such relief. Id. at 812. Third, if the balance tips decidedly in favor of the moving party, "a preliminary injunction will be granted if the [moving party] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." Id. at 813. However, if balance of likely harms stands equal, the moving party's probability of success now assumes real significance, and interim relief shall be granted only upon a clear showing of a likelihood of success on the merits. Id. Finally, the Court must evaluate whether the public interest favors granting preliminary injunctive relief. Id.

A district judge asked to decide whether to grant or deny a preliminary injunction must "choose[] the course of action that will minimize the costs of being mistaken." Scotts Co., 315 F.3d at 284 (quoting Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd., 780 F.2d 589, 593 (7th Cir. 1986)). Thus, while cases frequently refer to the harm to the moving party if the injunction is denied and the harm to the non-moving party if the injunction is granted, the real issue is the degree of harm that will be suffered by the moving party or the non-moving party if the injunction is improperly denied or granted. Id.

## III. REQUESTS FOR INJUNCTIVE RELIEF RELATED TO ISSUES OTHER THAN AHP'S TRADEMARKS AND SERVICE MARKS

### A. Balance of Likely Harms

As discussed below, the Court finds that the balance of harms with respect to AHP's requests for injunctive relief related to Olympus' client services, Olympus' employment of former AHP employees, AHP's alleged trade secrets and confidential information and the production of documents does not tip in favor of the movant AHP. Rather, the balance of harms favors Olympus or is, at most, neutral.

#### 1. AHP

AHP asserts that it will suffer irreparable harm if Olympus is not enjoined from establishing a healthcare provider network similar in form or substance to AHP's, because if Olympus is permitted to do so, AHP will suffer a loss of customers and the loss of its goodwill. (See Doc. No. 12 at 16). "[I]t is axiomatic that purely economic injury, such as that resulting from lost sales, profits or market share, does not constitute irreparable harm sufficient to warrant injunctive relief." SouthTech Orthopedics, Inc. v. Dingus, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006). Only if a movant can show the "'possibility of permanent loss of customers to a competitor or the loss of goodwill'" resulting in "damages [which] are intangible and thus impossible to ascertain" will the showing of irreparable harm be sufficient. Id. (quoting Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994)).

The Court finds that while AHP has shown the possibility that it might be harmed by Olympus' conduct, AHP has not, on the record before the Court, established a likelihood of a permanent loss of customers or goodwill. AHP has not identified specific customers that it contends it has lost or will lose, nor has it fully explained how an award of monetary damages at the end of this litigation, should it ultimately prevail on its counterclaim, would be inadequate to remedy any harm it has suffered. Moreover, it was AHP, not Olympus, that first sought to end the parties'

Distribution Agreement, and the record reflects that AHP has now secured another distributor of its services. (See Doc. No. 14: Aff. of Steven W. Jacobson ("S. Jacobson Aff.") ¶¶ 39-43).

Similarly, AHP has not shown a likelihood of immediate, irreparable harm if the Court does not grant the requested injunction with respect to the employment of two of AHP's former employees, Dr. Carl Smart and Meredith Cassell or enjoin Olympus' use of AHP's trade secrets or "confidential information." The record establishes that Dr. Smart has been working with Olympus as its National Medical Director since April 2007, with AHP's knowledge and consent. (S. Jacobson Aff. ¶¶ 50, 58 & Ex. 10). Also, Olympus and Dr. Smart have represented that Dr. Smart's job responsibilities with Olympus are different from the responsibilities he had when he was employed by AHP.

Meredith Cassell, the other former AHP employee sought to be enjoined, is not an Olympus employee nor has she been offered a job by Olympus. (Id. ¶ 61; Doc. No. 15: Aff. of Meredith Cassell ¶ 8). In light of this, counsel for AHP stated at the hearing of this matter on January 16, 2009 that AHP no longer sought an injunction against Olympus' employment of Ms. Cassell.

Finally, AHP has made no evidentiary showing beyond its contention that Olympus, Dr. Smart or Meredith Cassell are using or threatening to use any alleged trade secrets or "confidential information" belonging to AHP. (S. Jacobson Aff. ¶¶ 59-60, 63; Doc. No. 16: Aff. of Dr. Carl A. Smart ("Smart Aff.") ¶ 17).

**2.  Olympus**

Against the alleged harm to AHP, the Court must balance the likely harm to Olympus if an injunction is issued improperly. Direx, 952 F.2d at 812. The Court finds that Olympus has shown that if an injunction is granted, its business could be effectively shut down, causing it substantial harm. AHP seeks to enjoin Olympus from "establishing a healthcare provider network that is similar

in form or substance, to that established by AHP." (Doc. No. 11 at 2). Olympus has offered evidence that its clients had access through Olympus to various networks of housecall physicians operated by third parties before its distribution agreement with AHP and represented that it offered "concierge" services to its clients before and during its association with AHP. If Olympus is not permitted to continue to make access to such networks and services available to its clients, then it cannot fully honor existing contractual commitments that require such access and will not be able to secure future contracts with international insurance company clients and prospective clients that need assistance in the United States for a full range of medical services, including housecall physicians. (S. Jacobson Aff. ¶¶ 10, 52, 54).

### B. Likelihood of Success

Because the balance of harms either favors Olympus or is neutral, AHP must make a strong showing that it is likely to succeed on its claims in order to be entitled to injunctive relief. See Scotts, 315 F.3d at 217.

AHP argues that § 9.1 of the Distribution Agreement between the parties prevents Olympus from offering its clients access to services similar to that provided by AHP. At this time, AHP has not demonstrated that it is likely to succeed on its contention that it was entitled to trigger the non-competition restrictions of the Distribution Agreement by terminating the agreement under § 11.2 of the agreement, which grants AHP the right to terminate the Distribution Agreement if Olympus "fails to perform new client sales objectives and does not cure the breach within six months." (S. Jacobson Aff. Ex. 1). There is no evidence in the record before the Court of the specific relevant sales objectives nor is there evidence - other than AHP's contention in the Verified Counterclaim - that Olympus failed to meet those objectives. Further, AHP has provided no evidence that even if Olympus failed to meet the sales objectives that AHP provided the required six month cure period.

In addition, AHP has not shown any likelihood of succeeding on its argument that Olympus should be restricted under § 9.1 of the Distribution Agreement even if the Distribution Agreement was terminated under a different provision than § 11.2.

Likewise, the Court finds that AHP has not made a showing that it is likely to succeed on the merits of its claim for tortious interference with AHP's agreements with Dr. Smart. Olympus has provided evidence that Dr. Smart's current job responsibilities are unrelated to developing any housecall physician networks, and the Court declines to find based on the current record that AHP will likely succeed in enforcing the proferred non-competition agreements against Dr. Smart with respect to his employment with Olympus. (See Smart Aff. ¶ 17; S. Jacobson Aff. ¶ 59).

Further, in the absence of record evidence of the specific identification of AHP's alleged trade secrets or confidential information and misappropriation of that information by Olympus, the Court finds that AHP has not shown a likelihood of success with respect to its claims related to trade secrets and confidential information.

### C. The Public Interest

The Court concludes that the public interest weighs against enjoining Olympus as sought by AHP. Instead, the public interest lies in preventing the harm to Olympus that would result from AHP's requested injunction, and in maximizing the availability of cost-effective medical care to policyholders of Olympus' clients within the United States.

### D. Conclusion

For the foregoing reasons, the Court finds that AHP has not met its burden under Blackwelder to establish that the balance of harms tips in its favor or that it is likely to succeed on the merits. Therefore, the Court **ORDERS** that AHP's requests for injunctive relief be **DENIED**, except as discussed below with respect to AHP's trademarks and service marks.

## IV. TRADEMARK AND SERVICE MARK ISSUES

In addition to the requested injunctive relief discussed above, AHP has moved to enjoin Olympus from improperly using AHP's alleged trademarks and service marks, which include InRoomMD, InHomeMD, BeWell™, GetWell™, TIMMS, and Travel Healthcare Concierge Program™, and sought to require Olympus to inform its clients that it does not own AHP or any right to use AHP's marks. AHP also seeks to require Olympus to amend its existing contracts (entered into during the parties' Distribution Agreement) to remove all references to AHP or its marks.

Olympus acknowledges that it does not have a right to use AHP's valid service marks or trademarks now that the parties are no longer working together and has represented to the Court that it has no intent to continue to use those marks. Olympus contends that those marks are limited to InRoomMD, InHomeMD, BeWell™, GetWell™, and TIMMS. AHP asserts that "Travel Healthcare Concierge Program™" should also be included. The Court has considered AHP's request that the marks protected by injunctive relief include Travel Healthcare Concierge Program™. The Court, however, declines to grant such relief because AHP has failed to show that this unregistered descriptive mark has acquired any secondary meaning requiring protection. See Dayton Progress Corp. v. Lane Punch Corp., 917 F.2d 836, 839 (4th Cir. 1990) (noting that marks that are merely descriptive are accorded protection only if they have acquired a "secondary meaning," that is, if "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." (quoting Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 851 n.11 (1982))).

The record also reflects that while Olympus has informed its customers that it no longer does business with AHP, (S. Jacobson Aff. ¶ 64), some of Olympus' customers have not yet removed

references to AHP's alleged trademarks from their websites. Accordingly, the Court finds that the balance of harms tips decidedly in favor of AHP with respect to any continued use of AHP's marks by Olympus or Olympus' clients. AHP may be irreparably harmed by any confusion that might result from the unauthorized use of its marks and Olympus will not be harmed by not using marks that it does not intend to use. However, the Court does not find that AHP will be similarly harmed if existing contracts are not amended.

AHP has made a clear showing of both irreparable harm and a likelihood of success on the merits of its trademark related claims.

Thus, the Court concludes that it is appropriate that an injunction issue to enjoin unauthorized future use of AHP's service marks or trademarks by Olympus and to require Olympus to make reasonable efforts to inform its customers that they should no longer use AHP's marks. The Court does not find that an injunction would be appropriate with respect to AHP's request that Olympus be required to amend existing contracts that reference AHP or AHP's marks.

**IT IS, THEREFORE, ORDERED** that Plaintiffs Olympus Managed Health Care, Inc. and Olympus Healthcare Solutions, Inc. shall, from the date of this Order and during the pendency of this action:

1. Be enjoined from making any unauthorized use of AHP's service and trademarks, including, but not limited to InRoomMD, InHomeMD, BeWell™, GetWell™, and TIMMS. However, Olympus is not required to amend existing contracts that reference AHP's trademarks or service marks; and

2. Make reasonable efforts to inform its clients that it does not own AHP or any rights to use AHP's trademarks and service marks and that they should cease any unauthorized use of AHP's service marks, or trademarks, including, but not limited

to InRoomMD, InHomeMD, BeWell™, GetWell™, and TIMMS.

3. Except as Ordered, AHP's requests for injunctive relief in items 6 and 7 of the prayer for relief in its motion are Denied.

Olympus has not requested that AHP be required to post a bond as security for this injunction and, accordingly, no bond is required.

**SO ORDERED**.

Signed: February 3, 2009

Robert J. Conrad, Jr.
Chief United States District Judge