IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:08CV532

| | |
|---|---|
| OLYMPUS MANAGED <br> HEALTH CARE, INC. and <br> OLYMPUS HEALTHCARE <br> SOLUTIONS, INC., <br>         Plaintiffs, <br> v. <br> AMERICAN HOUSECALL <br> PHYSICIANS, INC., and <br> JONATHAN MCGUIRE, <br>         Defendants. <br> and <br><br> AMERICAN HOUSECALL <br> PHYSICIANS, INC., f/k/a <br> INROOMMD, INC., <br>         Third-Party Plaintiff, and <br>         CounterClaimant <br> v. <br> RONALD A. DAVIS and <br> STEVEN W. JACOBSON, <br>         Third-Party Defendants | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Third-Party Defendants' "Motion to Dismiss..." (document #22) and "Memorandum of Law in Support ..." (document #23), both filed January 20, 2009; and the Third-Party Plaintiff's "Brief in Opposition ..." (document #31) filed February 11,

2009.

On February 23, 2009, the Third-Party Defendants filed their "Reply ..." (document #33). On March 2, 2009, the Third-Party Plaintiff filed its "Surreply ..." (document #35).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Third Party Defendant's Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is a counterclaim action alleging breach of fiduciary duty, breach of contract, tortious interference with contract, violation of the North Carolina Trade Secrets Protection Act, commission of unfair and deceptive trade practices, fraud, civil conspiracy, unjust enrichment, false designation of origin, quiet title to copyright and improper use of trademark. Taking the facts as alleged in the Verified Counterclaim as true, this action stems in part from the Third-Party Defendants' alleged intentional misrepresentation to the Third-Party Plaintiff that their two companies would merge in order to unlawfully gain access to Third-Party Plaintiff's confidential information, trademarks and employees in order to set up a competing business.

Third-Party Plaintiff, American Housecall Physicians, Inc. ("AHP"), is a corporation organized under the laws of the State of Nevada with its principal place of business in Charlotte, Mecklenburg County, North Carolina. AHP is in the business of providing in-room and in-home medical services through doctor networks across the United States. Olympus Managed Health Care, Inc. ("OMHC") is a corporation organized under the laws of the State of Delaware, with its principal

place of business in Miami, Dade County, Florida. Olympus Healthcare Solutions, Inc. ("OHCS"), the parent company of OMHC, is a corporation organized under the laws of the State of Delaware, with its principal place of business in Miami, Dade County, Florida. OMHC and OHCS (collectively "Olympus") are in the business of providing third party administrator services for insurance companies located outside of the United States related to the management of their insureds' medical claims for medical treatment in the United States. Third-Party Defendant, Ronald A. Davis, the Chief Financial Officer of OMHC and OHCS, is a resident of the State of Florida. Third-Party Defendant, Steven W. Jacobson, the President and Chief Executive Officer of OMHC and OHCS, is a resident of the State of Florida. Davis and Jacobson are the sole shareholders of OMHC and OHCS and are the only members on the Board of Directors of OMHC and OHCS.

On January 1, 2006, Olympus and AHP entered into a Memorandum of Understanding concerning discussions that Olympus and AHP had about the companies working together and entering into a business relationship to combine the companies' resources. On March 15, 2006, Olympus and AHP entered into a written Distribution Agreement whereby AHP agreed to allow Olympus to act as an exclusive distributor for its housecall physician network program to foreign insurance companies. After entering into the Distribution Agreement, Jacobson was elected to the Board of Directors of AHP on January 26, 2007.

In April 2007, Olympus and AHP began to consider a merger of the two companies. AHP asserts that numerous meetings and communications took place in Charlotte, North Carolina regarding the merger. On August 31, 2007, the companies executed a letter of intent (the "LOI") to pursue a merger of the two companies. Following the execution of the LOI, Olympus and AHP entered into a Services Agreement on September 10, 2007 that divided the responsibilities of the

3

companies and formulated how they would operate in contemplation of the completion of the merger. The parties negotiated and executed a merger agreement (the "Merger Agreement") that provided for a swap of stock between AHP and OMHC. The Merger Agreement was executed by all of the parties and was to held in escrow by Olympus's attorneys until the closing date, which was set for September 30, 2008. AHP asserts that it allowed Olympus complete access to its customer base, contacts, marketing materials and other proprietary and confidential information in anticipation of the pending merger. Additionally, AHP asserts that Davis and Jacobson represented to AHP that the merger would be completed and that all of the business relationships developed by AHP would remain protected. Ultimately, the merger was not completed.

AHP asserts that Olympus had warranted that there was no claim asserted by a third party that would interfere with the merger. However, on the day before closing, AHP asserts that Jacobson told AHP that because there was a pending claim against Olympus which involved Olympus' shares of stock, Olympus could not convey its stock as part of the merger and would not be able to close on the day contemplated in the Merger Agreement. Over the next few weeks, Olympus and AHP tried to find a way to complete the merger. AHP asserts that Olympus attempted to renegotiate the deal, offering to purchase AHP's assets at less than half of the value agreed to as part of the Merger Agreement. AHP also asserts that as part of the renegotiated deal, Olympus offered to convey the very stock it said it could not convey on closing day. On October 28, 2008, Olympus informed AHP that it was terminating the LOI. That same day, Jacobson resigned from AHP's Board of Directors. AHP asserts that Olympus, Davis and Jacobson never intended to complete the merger and in essence gained access to AHP's confidential information, trademarks and employees in order to set up a competitive business while intentionally misrepresenting their

4

intentions to merge the two companies.

As noted above, the Third-Party Defendant's Motion has been fully briefed and is, therefore, ripe for determination.

## II. DISCUSSION

### A. MOTION TO DISMISS THIRD PARTY DEFENDANT DAVIS FOR LACK OF PERSONAL JURISDICTION

Third-Party Defendant, Ronald A. Davis, contends that his one meeting with AHP in Charlotte, North Carolina is insufficient to establish "minimum contacts" under the standards of International Shoe Co. v. Washington, 326 U.S. 310 (1954) and its progeny and therefore, the Court does not have personal jurisdiction over him for the claims brought against him by AHP.

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party, who need make only a prima facie showing that exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); and General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991).

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). However, because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one."

Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

The exercise of personal jurisdiction comports with due process when the defendant purposefully established "minimum contacts" in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. In addition, the court's exercise of personal jurisdiction must comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (personal jurisdiction exists where defendant introduces product into stream of commerce with expectation that citizens in forum state will use the product).

Later cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 523 (M.D.N.C. 1996), citing Burger King, 471 U.S. at 472; and World Wide Volkswagen, 444 U.S. at 297.

A court's exercise of personal jurisdiction may be specific or general. General personal jurisdiction exists, even when an action does not arise out of the non-resident defendant's contact with the forum state, if the non-resident defendant has had continuous and systematic contact with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983).

Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. See Helicopteros, 466 U.S. at 414; Vishay Intertech, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1068 (4th Cir. 1982) (sufficient minimum contacts found under North Carolina long-arm statute when defendant wrote three letters and initiated five telephone calls to the plaintiff in North Carolina).

Applying the above principles to the subject motion, Third-Party Defendant Davis has had sufficient "minimum contacts" with North Carolina to satisfy due process requirements for the exercise of personal jurisdiction. Even though the parties have agreed that Davis has not "had continuous and systematic contact" with North Carolina, Helicopteros, 466 U.S. at 414-15, such as would justify personal jurisdiction generally, the events which give rise to the Third-Party Plaintiff's claims do support personal jurisdiction in this specific instance. Id. Indeed, taking AHP President Andrew S. Jacobson's affidavit as true, as we must at this early point in the proceedings, Davis specifically directed his contact concerning the merger to Jacobson and other Board Members of AHP in Charlotte, North Carolina. These contacts included two visits to Charlotte concerning the proposed merger, several telephone communications initiated by Davis to Jacobson in North Carolina, and multiple e-mails that Davis sent to Jacobson concerning the merger that were directed to Jacobson's office in Charlotte, North Carolina.

In short, where the Defendant "purposefully directed" his activity at a resident of North Carolina, and this litigation results from alleged injuries to that resident that "arise out of or relate to" those activities, Burger King Corp., 471 U.S. at 472, the exercise of personal jurisdiction comports with traditional notions of "fair play and substantial justice." World Wide Volkswagen, 444 U.S. at 292. Accordingly, the undersigned will respectively recommend that the Third-Party

7

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction be <u>denied</u>.

### B. <u>MOTION TO DISMISS COUNT II, BREACH OF CONTRACT ALLEGATIONS AGAINST THIRD-PARTY DEFENDANT, STEVEN W. JACOBSON</u>

AHP concedes that it did not intend to assert a claim for breach of contract against Steven W. Jacobson. Therefore, to the extent that AHP's Verified Counterclaim contains a claim for breach of contract, the undersigned respectfully recommends that it be dismissed and the Third-Party Defendants' Motion to Dismiss Count II against Jacobson must be <u>granted</u>.

### C. <u>MOTION TO DISMISS COUNT VII, FRAUD ALLEGATIONS AGAINST THIRD-PARTY DEFENDANTS STEVEN W. JACOBSON AND RONALD A. DAVIS, COUNT VIII, CONSTRUCTIVE FRAUD ALLEGATIONS AGAINST JACOBSON, AND COUNT IX, CIVIL CONSPIRACY ALLEGATIONS AGAINST JACOBSON AND DAVIS</u>

#### 1. <u>Standard of Review</u>

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir.), <u>cert. denied</u>, 510 U.S. 828 (1993), <u>citing</u> 5A C. Wright & A. Miller, <u>Fed. Practice and Procedure</u> §1356 (1990).

As a general rule, a plaintiff's complaint need only provide a short statement in plain English of the legal claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, however, the pleader must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief. <u>Twombly</u>, 550 U.S. at 555-56. A complaint must do more than merely "*avoid foreclosing* possible bases for relief; it must actually *suggest* that the

plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### 2. Fraud (Count VII)

The Third-Party Defendants argue that the fraud claim must be dismissed because the claim is based on promissory misrepresentations and a defendant cannot be liable in tort for the failure to perform a future promise.

The essential elements of fraud are "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Rowan County Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (quoting Terry v. Terry, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981)). "As a general rule a mere promissory representation will not be sufficient to support an action for fraud. A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." Leftwich v. Gaines, 134 N.C.App. 502, 508, 521 S.E.2d 717, 723 (1999) (citing Johnson v. Phoenix Mutual Life Insurance Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980). "A statement purporting to be an opinion may be the basis for fraud if, at the time it is made, the

9

maker of the statement holds an opinion contrary to the opinion he or she expresses, and the maker also intends to deceive the listener." Leftwich, 134 N.C. App. at 508-509, 521 S.E.2d at 723. "This rule recognizes the state of any person's mind at a given moment is as much a fact as the existence of any other thing." Id. (citations omitted). "The fraudulent nature of such statements may be proved by circumstantial evidence." Id.

Viewed in the light most favorable to the Third-Party Plaintiff, AHP alleges that Davis and Jacobson each made multiple representations about the fact that the merger would be consummated. Additionally, AHP alleges that neither Davis nor Jacobson ever intended to complete the merger and instead made their statements regarding the completion of the merger in order to induce AHP to disclose confidential and proprietary business information, its goodwill, its network, employees and contractors in order to organize a competing business of their own. AHP alleges that the best evidence of Davis' and Jacobson's intent is the fact that they did not return to their core business after the merger failed and instead opened a competing concierge health care program using all the information they had obtained from AHP. Based on these allegations, rather than dismissal at this early stage of the proceeding, the undersigned will respectfully recommend that the Third-Party Plaintiff be allowed to conduct discovery on this point and that the Third-Party Defendants' Motion to Dismiss Count VII be <u>denied</u>. And, of course, as in regard to all claims, the Third-Party Defendants will be entitled to renew their factual and legal arguments after the conclusion of discovery in a timely filed motion for summary judgment.

### 3. Constructive Fraud (Count VIII)

As with the Third-Party Defendants fraud claim discussed above, Third-Party Defendant Steven W. Jacobson contends that the constructive fraud claim against him should be dismissed

because it is based on promissory misrepresentation and a defendant cannot be liable in tort for the failure to perform a future promise.

To assert a claim of constructive fraud, plaintiff must allege:

> (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured. Intent to deceive is not an element of constructive fraud. The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself.

Clay v. Monroe, 658 S.E.2d 532, 536 (2008) (quoting White v. Consolidated Planning, Inc., 166 N.C.App. 283, 294, 603 S.E.2d 147, 156 (2004)).

> The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff.

Terry v. Terry, 302 N.C. 77, 85, 273 S.E.2d 674, 679 (1981).

Third-Party Plaintiff AHP asserts that the constructive fraud claim is based not only on the failed merger, but also on Jacobson's breach of fiduciary duties while a director of AHP. AHP alleges that as a director of AHP, Jacobson breached his fiduciary duties in numerous ways including obtaining confidential information, usurping business opportunities of AHP for the benefit of himself and Olympus, and allowing third parties to eavesdrop through electronic means on AHP Board of Directors' meetings.

As stated above, and based on the fact that a claim of constructive fraud "defies specific and concise allegations," the undersigned will respectfully recommend that the Third-Party Plaintiff be allowed to conduct discovery on this point and that the Third-Party Defendants' Motion to Dismiss Count VIII be <u>denied</u>. And, of course, as in regard to all claims, the Third-Party Defendants will

be entitled to renew their factual and legal arguments after the conclusion of discovery in a timely filed motion for summary judgment.

### 4. Civil Conspiracy (Counts IX)

The Third-Party Defendants argue that the civil conspiracy claim must be dismissed because of the intracorporate conspiracy doctrine, which the Fourth Circuit has explained as follows:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (citations omitted). Third-Party Defendants, Davis and Jacobson, argue that as officers of Olympus, they cannot be found to have conspired with one another. However, "an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." Id. at 1252.

AHP contends that the LOI outlines the merger and details how Davis and Jacobson, the two shareholders of Olympus, would have had to share the benefits from the merger with the shareholders of AHP. "The current shareholders of OHCS (Steve Jacobson and Ronald A. Davis) will individually own and control sixty percent (60%) of the shares and AHP shareholders will own and control forty percent (40%) of the shares." Verified Counterclaim, Exhibit H. The merger would have diluted Davis' and Jacobson's shareholder interest in Olympus and consequently, they personally benefitted by freezing out AHP shareholders at the last minute and reducing the number of potential shareholders in the surviving company. Based on these allegations, the Third-Party Defendants' actions fall within the exception to the Intracorporate Immunity Doctrine and accordingly, the undersigned will respectfully recommend that the Third-Party Defendants' Motion to Dismiss Count IX be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Third-Party Defendants' "Motion to Dismiss..." (document #22) be **GRANTED IN PART** and **DENIED IN PART,** that is**, GRANTED** as to Count II against Third-Party Defendant, Steven W. Jacobson**;** and **DENIED** in all other respects**.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED.**

Signed: April 14, 2009

David S. Cayer
United States Magistrate Judge